ANDREA MARTINEZ (#9313)
First Assistant United States Attorney
Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515
JOEL A. FERRE, Assistant United States Attorney (#7517)
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
joel.ferre@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RIDLEY'S FAMILY MARKETS, INC.,<br><br>Defendant. | **UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL MEDIATION (ECF No. 23)**<br><br>Civil No. 1:20-cv-00173 TS JCB<br><br>Judge Ted Stewart<br>Magistrate Judge Jared C. Bennett |

The United States of America opposes Defendant Ridley's Family Markets' ("Ridley's") Motion to Compel Mediation because the court lacks authority to compel mediation in this case and mediation now is both premature and unlikely to resolve the case.

### INTRODUCTION

Between June, 2017, and February 2019, Ridley's filled 160 prescriptions for a married couple who lived in Morgan, Utah. Most of the prescriptions were for opioid drugs that had a high potential for abuse, and all were invalid because they were not written for a legitimate medical purpose or by a practitioner acting in the usual course of medical practice. The

1

prescriptions contained obvious signs of invalidity, both on their faces and in the circumstances surrounding their issuance that Ridley's pharmacists ignored.

The complaint[1] details the allegations giving rise to the DEA investigation which resulted in the filing of litigation when the parties could not reach a resolution. Since first learning of the violations in early 2019, Ridley's has met with DEA investigators who have explained the violations and the basis for each, has hired its own experts, and has been told several times the range of penalties the United States considered reasonable and would accept. In explaining the penalty range, the United States described the basis for the penalties, tied the range to actual violations, and provided recent precedent for the range. Throughout, the issue has not been whether Ridley's violated federal statutes, but what the penalty amount should be.

In response, Ridley's provided a letter explaining why it believed it properly filled two of the 160 prescriptions at its Morgan store and listing 7 actions it took in response to the violations. Later, it made a single offer for an amount unhinged from any of the alleged violations. Although the United States invited Ridley's to present its case and explain its offer, it didn't.

Although Ridley's sought to mediate the case in late 2020, the United States declined, in part because of the significant difference between the United States' expressed penalty range and Ridley's offer. Instead, the United States prepared a civil complaint, shared it with Ridley's in November, and then filed it in December. Because neither party's position has changed and there is an unresolved motion to dismiss, mediation now is premature and would be unproductive, only further delaying a resolution, and expending additional time and resources for both sides.

---

[1] ECF No. 2

ARGUMENT

I.  BECAUSE THE COURT'S LOCAL RULES AND ADR PROGRAM PROVIDE ONLY FOR VOLUNTARY MEDIATION, AND THE PARTIES DISAGREE, THE COURT LACKS AUTHORITY TO COMPEL MEDATION HERE.

There are only two potential sources of authority that give the court power to compel the United States, a non-willing party, to mediate this case. The first potential source is the court's local rules. "The Court may refer the parties to mediation [ ] pursuant to either DUCivR 16-2 (through the Court's ADR program) or DUCivR 16-3 (through a settlement conference with a judge of the Court)."[2] The court's ADR program requires all parties to agree to participation.[3] Thus, under the district court's local rules at least, the United States cannot "be ordered into mediation where, as here, [it] does not believe that mediation would be productive."[4] And because Ridley's has not requested a settlement conference, Rule 16-3 provides no authority.

---

[2] *Clearone Comm'n, Inc. v. Chiang*, No. 2:07-CV-37 TC, 2008 WL 2149837 at *1 (D. Utah May 21, 2008). Neither the Alternative Dispute Resolution Act nor Rule 16 of the Federal Rules of Civil Procedure provide the court authority here to mandate mediation. *In re Atlantic Pipe Corp.*, 304 F.3d 135, 141 (1st Cir. 2002) (holding that the ADR Act and the Federal Rules of Civil Procedure themselves, in the absence of a local rule, do not authorize any specific court to order a particular ADR mechanism).

[3] Utah's ADR Plan § 1(a) (allowing "any party to a civil action which has been referred to the ADR Program [to] opt out of participation in the program") https://www.utd.uscourts.gov/adr-plan#aOptingOut (last visited February 25, 2021); *Singer v. Dep't of Health & Human Srvcs.*, 641 F. Supp.2d 1219, 1224-25 (D. Utah 2009) (denying motion to refer case to mediation under the court's ADR plan because not all parties agreed to participation).

[4] *Singer,* 641 F. Supp.2d at 1225; See also *Lopez v. Admin. Office of the Courts*, 420 Fed. Appx. 794 (10th Cir. 2011) (noting that Utah's federal district court has established an alternative dispute resolution program where dispute resolution is voluntary and citing DUCivR 16-2). Under Utah's local rules and ADR Program, mediation is voluntary. DUCivR16-2(e) allows a court to refer a case "into the court's ADR program" which includes mediation. Utah's ADR Plan § 1(a) permits "any party to a civil action which has been referred to the ADR Program [to] opt out of participation in the program." https://www.utd.uscourts.gov/adr-plan#aOptingOut (last visited February 25, 2021).

The second potential source is the court's inherent authority to manage its docket. "'Inherent power,' is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[5] Courts, however, are split on whether this inherent power gives a court power to order mediation when the parties don't agree.[6]

While courts have extended this inherent power to permit a court to mandate mediation, they have not done so where inherent powers "cannot be exercised in a manner that contradicts an applicable statute or rule."[7] An exercise of inherent authority in this case contradicts DUCiv 16-2, which provides for only voluntary mediation.[8]

There are two additional, practical reasons to deny Ridley's motion: mediation is premature and is unlikely to produce a settlement.

---

[5] *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962).

[6] *In re Atlantic Pipe Corp.*, 304 F.3d at 143-46 (acknowledging the debate surrounding mandatory mediation and cases that have held a court does not have inherent power to order mandatory mediation). *Corps. For Character v. Fed. Trade Comm'n*, No. 2:11-cv-00419, 2018 WL 3539830, at *1 (D. Utah July 23, 2018), and *In re New Canyonlands by Night, LLC,*, No. 2:17-CV-01293-DN, 2020 WL 519178, at *1 (D. Utah Jan 31, 2020), cited by Ridley's as examples of a court's exercise of inherent authority are, rather, not examples of a court's use of inherent authority to compel mediation. In *Corps. for Character*, the court referred the case to mediation upon the joint request of both parties, presumptively under DUCivR 16-2. In *New Canyonlands*, the court ordered the parties to a settlement conference and concurrent mediation pursuant to DUCivR 16-3(b), not pursuant to its inherent powers.

[7] *In Re Atlantic Pipe Corp.*, 304 F.3d at 144 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).

[8] *See HSBC Bank USA v. Lombardo*, No. 2:19-cv-00291, 2020 WL 6136213, at *9 (D. Maine Oct. 19, 2020) (finding the court could not compel the parties to mediate using its inherent authority where the court's local rules only permitted voluntary mediation).

## II.     MEDIATION NOW IS PREMATURE.

An order mandating mediation is premature and would not lead to a quick end of this litigation. Both parties have different views on the viability of the United States' claims. The parties' different views are illustrated by Ridley's motion to dismiss. In that motion, Ridley's argues that a pharmacist's legal obligation is to verify only the external appearance or facial validity of written prescriptions to ensure they contain certain essential regulatory information like a name, address, date, and drug name.[9] In stark contrast, the United States' complaint alleges Ridley's has a three-part responsibility to scrutinize prescriptions for signs of invalidity and to not fill prescriptions when it cannot resolve those signs.[10] Ridley's motion has not been fully briefed, but if granted, would dismiss the case or move it to Wyoming or Idaho. If mediation is mandated, it should not be until at least after the court decides the motion to dismiss.

Also, the parties should be allowed to engage in discovery before having to mediate. Ridley's acknowledges the need for discovery by requesting more than the standard number of depositions and interrogatories when the parties were preparing the scheduling order. After discovery, the parties' positions may change enough that mediation would then be productive and more likely to produce a settlement.

## III.     MEDIATION NOW IS UNLIKELY TO PRODUCE A SETTLEMENT.

"When mediation is forced upon unwilling litigants, it stands to reason that the likelihood of settlement is diminished. Requiring parties to invest substantial amounts of time and money in

---

[9] Motion to Dismiss at pg. 13, ECF No. 21.

[10] Compl. ¶¶ 18-23, ECF No. 2.

mediation under such circumstances may well be inefficient."[11] Given the parties' current views on the law, facts, and remedies, mediation is highly unlikely to produce a settlement.

Even though the parties evaluated their respective claims and discussed penalties for 18 months or more before the United States filed its complaint, the parties' views on a reasonable penalty were far apart. Nothing has happened since filing of the complaint to indicate mediation now would be productive. Instead, Ridley's actions since filing the complaint indicate mediation now is more unlikely to produce a settlement. Ridley's has moved to dismiss the entire case, arguing a theory of compliance starkly different than that of the United States.[12] And while the parties were discussing the scheduling order, Ridley's indicated the likelihood of settlement was poor. Now, just a few weeks later, it seeks to compel mediation.

## CONCLUSION

The court should deny Ridley's motion to compel. The United States believes mediation may assist in reaching a resolution, but not at this time. Mediation is more effective when initiated by agreement of the parties and is likely to produce a settlement.[13] That is not yet the case here.

---

[11] *In re Atlantic Pipe Corp.*, 304 F.3d at 143 (citing *Cf.* Richard A. Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations*, 53 U. Chi. L. Rev. 366, 369-72 (1986)).

[12] Compl. ¶ 42, ECF No. 2. *See also U.S. v. Lovern*, 590 F.3d 1095, 1100 (10th Cir. 2009) (upholding pharmacist's conviction of conspiracy to dispense controlled substances for acting outside the course of is professional practice in not taking steps to identify and resolve signs of prescription invalidity).

[13] *See In Re Atlantic Pipe Corp.*, 304 F.3d at 135 (noting that when mediation is "forced upon unwilling litigants, it stands to reason that the likelihood of settlement is diminished" and requiring parties to mediation under such circumstances "may well be inefficient"); *Clearone,*

Respectfully submitted this 25th day of February, 2021.

        ANDREA MARTINEZ
        First Assistant United States Attorney
        Attorney for the United States, Acting under
        Authority Conferred by 28 U.S.C. § 515

        */s/ Joel A. Ferre*_____
        JOEL A. FERRE
        Assistant United States Attorney

---

2:07-CV-37 TC, 2008 WL 2149837 at *1 (D. Utah May 21, 2008) (observing that ordering parties to mediate "seems inconsistent with a process which depends on agreement").