IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>RIDLEY'S FAMILY MARKETS, INC.,<br><br>　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE<br><br>Case No. 1:20-cv-173-TS-JCB<br><br>Judge Ted Stewart |

　　　　This matter comes before the Court on a Motion to Exclude Expert Testimony[1] filed by Plaintiff the United States of America and two motions filed by Defendant Ridley's Family Markets ("Ridley's"): a Motion to Exclude, or in the Alternative Extensively Limit Purported Expert Testimony of Gina Moore;[2] and a Motion to Exclude the Government's Nonretained Experts.[3] As discussed below, the Court will (1) deny Plaintiff's Motion to Exclude, (2) grant in part Defendant's Motion to Exclude Gina Moore, and (3) deny Defendant's Motion to Exclude the Government's Nonretained Experts.

I. BACKGROUND

　　　　The case's background is discussed in greater detail in the Memorandum Decision and Order Denying Plaintiff's Motion for Summary Judgment. Defendant Ridley's Family Markets, Inc. ("Ridley's") is a grocery store chain that operates a pharmacy in Morgan, Utah, licensed by

---

[1] Docket No. 96.

[2] Docket No. 95.

[3] Docket No. 94.

the Drug Enforcement Administration ("DEA"). Plaintiff claims Ridley's violated the Controlled Substances Act (the "CSA") when it dispensed prescriptions that exhibited "red flags" that the pharmaceutical industry associates with illegitimate prescriptions. On February 19, 2024, the parties filed their respective motions to exclude.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 allows an expert to testify if the proponent has demonstrated by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Although the Rule 702 standard is "liberal regarding expert qualifications,"[4] "the proponent of expert testimony bears the burden of showing that the testimony is admissible."[5] Rule 702 also "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."[6] This involves a two-step analysis of the expert's qualifications and the reliability of her methods.[7] The district court "must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[8] "Preliminary questions concerning the qualification of a person to be a witness . . .

---

[4] *Fowers Fruit Ranch, LLC v. Bio Tech Nutrients, LLC*, No. 2:11-CV-00105-TC, 2015 WL 2201715, at *1 (D. Utah May 11, 2015) (quoting *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995)).

[5] *Id.* (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013)).

[6] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).

[7] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

[8] *Id.* (quoting FED. R. EVID. 702).

should be established by a preponderance of proof." [9] Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[10] The *Daubert* factors for determining whether an expert's method is reliable include: "(1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community."[11] Although a district court may examine the method, "[a]t the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions."[12]

Each motion raises specific issues of qualifications and reliability. The Court will address each Motion in turn.

### III. DISCUSSION

A. DEFENDANT'S MOTION TO EXCLUDE EXPERT GINA MOORE

Defendant contends that Moore is unqualified to opine about Utah pharmacy standards or forged signatures. Defendant also argues that Moore's testimony about what one Ridley's pharmacist learned at a conference is unreliable. Defendant further argues that Moore is not qualified to offer legal opinions.

First, Defendant asserts that under *Gonzales v. Oregon*,[13] state-specific standards of professional conduct are the relevant measure of a pharmacist's duty of care, and because Moore lacks Utah-specific training and experience, she is unqualified to opine on Utah-specific issues

---

[9] *Daubert*, 509 U.S. at 592 n.10 (internal quotation marks and citation omitted).

[10] *Nacchio*, 555 F.3d at 1241.

[11] *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (citing *Daubert*, 509 U.S. at 593–94).

[12] *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014).

[13] 546 U.S. 243 (2006).

and her testimony would be unhelpful and misleading to the jury. In *Gonzales*, the United States Attorney General issued an interpretive rule for the CSA that outlawed Oregon's established medical law and practice. The Supreme Court struck down the rule, holding that the CSA did not empower the Attorney General to overrule a state medical regime. Defendant cites this reasoning to argue that because the CSA does not define a pharmacist's "corresponding responsibility," only Utah-specific standards apply, and Moore's lack of Utah training disqualifies her from opining on Utah-specific issues.

Although Utah-specific pharmacy law governs Ridley's actions, Moore's extensive experience as a pharmacy professor and her understanding of professional standards qualifies her as an expert for defining professional standards and a pharmacist's professional judgment generally.[14] Thus, Moore's testimony about a pharmacy professional's standard of care is admissible. Her lack of Utah-specific knowledge affects the weight of her testimony. Defendant can challenge her lack of Utah-specific knowledge through "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]'"[15]

Defendant also cites *Conroy v. Vilsack*,[16] arguing that Moore's testimony on Utah professional standards would be unreliable because an expert cannot "manufacture expertise" by studying about a topic she is not already an expert on.[17] In *Conroy*, the Tenth Circuit upheld the district court's decision to exclude an expert witness because she had no specific expertise on the subtopic she was asked to opine on because the subtopic was not "within the reasonable

---

[14] *See* Docket No. 95, Ex. 1.

[15] *Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 994 (10th Cir. 2003) (quoting *Daubert*, 509 U.S., at 596).

[16] 707 F.3d 1163 (10th Cir. 2013).

[17] Docket No. 95, at 4.

confines" of her expertise.[18] In contrast, Moore's experience regarding pharmacy standards of care and a pharmacist's professional judgment fits within the reasonable confines of her expertise. Indeed,

> this case is not a case in which [Moore] could have reached [her] opinions only after performing exacting scientific experiments. Rather, the expert witness[] in this case may give [her] opinions after evaluating the underlying case based on the applicable standard of care. Each expert's experience provides the method of evaluation.[19]

Accordingly, Moore's pharmacy expertise applied to the facts would be helpful to the fact finder. Her method of learning the Utah-specific information would again go to the weight, not the admissibility, of her testimony. Thus, the Court finds that Moore is qualified to opine on red flags and a pharmacist's standard of care, her testimony is reliable, and her lack of Utah-specific knowledge goes to weight, not its admissibility.

Second, Ridley's argues that Moore is not qualified to testify about the forged prescription signatures because she is not a handwriting expert. As an expert in pharmacy standards, Moore can testify about warning signs for pharmacists regarding a signature's legitimacy. However, the Court agrees that she cannot testify about whether a specific signature was stamped or signed as this testimony would interfere with the jury's fact-finder role. Moore can discuss what pharmacists look for when determining signature forgeries and may point out discrepancies that would indicate that the signatures were forged, but she cannot testify that a specific signature was forged.

Third, Defendant argues that Moore's testimony about the content of the 2014 pharmacist's conference that Deanna Reyna attended is unreliable and speculative because her

---

[18] *Conroy*, 707 F.3d at 1169 (internal quotation marks and citation omitted).

[19] *Nat'l Indem. Co. v. Nelson, Chipman & Burt*, No. 2:07–CV–996 TS, 2013 WL 443851, at *2 (D. Utah Feb. 4, 2013).

testimony is based on both inadmissible hearsay and "mere subjective belief or unsupported speculation."[20] An expert's opinion may rely on inadmissible evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[21] Additionally, experts may base their opinion on facts or data that the expert "has been made aware of."[22] "Absolute certainty is not required" for an expert to make an inference based on data or facts presented to them.[23] However, an expert's opinion must be based on "scientific methods and procedures, not mere subjective belief or unsupported speculation."[24]

Here, Moore's testimony about the conference Reyna attended and what she would have learned there is not expert testimony as contemplated by the Federal Rules: the PowerPoint, DEA information, and the attendance list are not the type of evidence that a pharmacy expert would rely on in making an expert opinion, and it falls outside her expertise because it is not scientific or technical. Instead, it is lay opinion evidence for which Moore has no independent knowledge, which is also inadmissible. Further, any such testimony would be purely speculative and, therefore, not helpful to the trier of fact. The Court will therefore exclude this testimony.

Fourth, Defendant argues that Moore's "opinion that Ridley's pharmacists knowingly, or at least with willful blindness, violated their corresponding responsibility under the CSA and its regulations when they dispensed controlled substances to the [forger]" is unreliable and is an

---

[20] Docket No. 95, at 7 (quoting *Truegreen Cos., LLC v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937, 958 (D. Utah Feb. 13, 2007)).

[21] FED. R. EVID. 703.

[22] *Id.*

[23] *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (internal quotation marks and citation omitted).

[24] *Truegreen Cos., LLC*, 508 F. Supp. 2d at 958.

inadmissible legal conclusion.[25] Defendant also argues that Moore's opinion regarding a pharmacist's "corresponding responsibility" is inadmissible because her definition would be confusing and prejudicial.

To be reliable and thus "admissible, an expert's testimony must be helpful to the trier of fact."[26] "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field."[27] Further, testimony is admissible "if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function," but is not admissible "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based."[28] In other words, "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment."[29]

Moore's report opines that Ridley's acted "knowingly" and with "willful blindness," and that the pharmacists violated their "corresponding responsibility."[30] This testimony is improper because it would direct the jury to a specific outcome: that Defendant violated the CSA. Such testimony infringes on the role of the Court and the jury. However, she may testify about what "corresponding responsibility" means within her area of expertise because her opinion and

---

[25] Docket No. 95, at 9.

[26] *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (citing FED. R. EVID. 702).

[27] *Id.* (citation omitted).

[28] *Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 2005).

[29] *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005).

[30] Docket No. 95-3, at 1.

interpretation would be helpful to the jury. She may also point to certain facts that identify a pharmacist's "corresponding responsibility" based on her specialized knowledge. Thus, the Court finds that Moore is qualified to discuss the pharmacists' "corresponding responsibility" and how certain facts fall into that standard, but will exclude her opinion that directs the jury to find that the pharmacists acted "knowingly" or with "willful blindness."

Moore's testimony about red flags, a pharmacist's standard of care, and detecting forged signatures is admissible, but her testimony that the signatures were forged, inference about what Pharmacist Reyna learned at the DEA conference, and testimony that directs the jury to a legal conclusion is not admissible. The Court further instructs the parties that specific objections to Moore's testimony beyond the above-stated limitations can be addressed at trial.

B.     PLAINTIFF'S MOTION TO EXCLUDE EXPERTS JAMES RUBLE AND JACK TEITELMAN

   1. James Ruble

Plaintiff does not question Ruble's qualifications but instead objects to his opinion's the reliability and relevance. Plaintiff argues that Ruble's opinion that red flags are not an established professional standard would confuse the jury. Plaintiff also objects to Ruble's legal conclusion that Ridley's pharmacists did not act with willful blindness. Plaintiff further argues that Ruble's comments about DEA practices and the DEA's other enforcement actions are irrelevant. Finally, Plaintiff objects to Ruble's methodology supporting his opinion that red flags are not standardized. Defendant responds that Ruble's opinions are reliable and should be admitted without restriction.

First, Plaintiff argues that Ruble's testimony that the CSA does not require a red flags analysis is unreliable because Ruble bases his opinions on a lack of official guidance about the

term red flags and his testimony would confuse the jury. However, Ruble's testimony is admissible because pharmacy standards of care are part of his expertise and are relevant to the case. This Court has previously established that the failure to recognize and resolve red flags is circumstantial evidence of whether a pharmacist acted with willful blindness.[31] Defendant has accepted this standard.[32] Ruble's testimony that red flags are not included in the CSA does not counteract the Court's instruction that red flags are acceptable circumstantial evidence. Indeed, the two conclusions are not mutually exclusive: it is true that the CSA does not mention red flags, and it is also true that red flags are an established pharmaceutical industry standard that can indicate whether a pharmacist performed her "corresponding responsibility" under the CSA. A jury could appreciate this distinction and not be confused by it. Thus, the Court finds that Ruble's testimony about a lack of official guidance is admissible.

Second, Plaintiff argues that Ruble "may not tell the jury what conclusions to reach," specifically that the pharmacists were not willfully blind.[33] As discussed above with Moore, Ruble may testify about specific facts he believes support his opinion that Ridley's pharmacists were not willfully blind but may not usurp the role of the Court and the jury. Like Moore, his expertise and relevant experience would be helpful to the jury in determining the correct industry standard. The Court repeats its admonition and again instructs the parties that specific objections to proposed testimony can be raised in a motion in limine or at trial.

---

[31] Docket No. 56, at 5 ("[C]ourts, including the Tenth Circuit, and the Drug Enforcement Administration have held that pharmacists and pharmacies violated 21 C.F.R. § 1306.04(a) and the CSA when they failed to investigate red flags connected with prescription").

[32] Docket No. 137, at 28 n.11 (SEALED) ("Ridley's does not dispute the concept of 'red flags' as a type of circumstantial evidence but rather the specific 'red flags' at issue in this case and what they meant to the pharmacists whose work has been criticized by [Plaintiff].").

[33] Docket No. 96, at 6.

Third, Plaintiff argues that Ruble's testimony criticizing the DEA are not relevant or probative and would be highly prejudicial. Ruble's opinion would likely be inadmissible under Rule 403 because it does not seem to be probative to the red flags issue and would be prejudicial to Plaintiff. However, Plaintiff's objection is not based on Ruble's qualifications or the reliability of his method, but instead on the content of his testimony. The Court will withhold judgment on this argument until trial.

Fourth, Plaintiff argues that Ruble cannot testify about additional DEA investigations of Ridley's (or a lack thereof) because it is irrelevant, inadmissible propensity evidence, and not based on reliable expert methodology. Defendant responds that evidence of the lack of other proceedings is relevant to show that the DEA's standards for "corresponding responsibility" are so unclear that even Plaintiff cannot tell when the threshold is crossed. It is probable that evidence of other proceedings (or lack of them) would be prejudicial. It is also probable that this type of speculation is not the kind of inference that a pharmacy expert would likely have the expertise to make. However, at this stage, it is not too speculative to be admitted because other pharmacy experts may rely on DEA investigations when determining violations of the law. The Court will address this issue closer to trial because it requires more context to determine its evidentiary value.

Fifth, Plaintiff argues that Ruble's testimony about official CDC and DEA documents' lack of red flag instruction is inadmissible because "opinions based on non-existent documents and regulations are unreliable."[34] But these documents are the type of documents that a pharmacy expert would look to when determining federal requirements, and Ruble, like Moore, is applying his knowledge and expertise to interpret the facts. Although his expertise is

---

[34] Docket No. 96, at 8.

sufficient, Plaintiff's objection goes to the content of his testimony, not the method supporting his conclusion, and as above, the Court will withhold judgment on this specific issue until an evidentiary motion is filed or it is discussed at trial.

Thus, James Ruble's testimony is admissible as he is a pharmacy expert. The Court will deny the Motion to Exclude and instruct the parties that more specific objections can be raised in a motion in limine or at trial.

2. Jack Teitelman

In the same Motion, Plaintiff objects to Jack Teitelman's entire testimony, stating he is not qualified to testify about retail pharmacies as a veterinary pharmacy expert and that his testimony "second-guessing the DEA's investigation" would not be relevant.[35] Defendant responds that Teitelman is qualified to testify about the DEA's investigation and mistakes in this case by both his DEA experience and his current role as a private DEA-compliance consultant. Defendant also argues his testimony is relevant to show that, under the totality of the circumstances, the pharmacists exercised their professional judgment.

An expert must be qualified by "knowledge, skill, experience, training, or education" to render an opinion.[36] Additionally, an expert may testify about areas "within the reasonable confines" of his subject area.[37] However, an expert who "possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury."[38] Indeed, even if an expert is qualified and his method is reliable, *Daubert* also requires the trial court to determine

---

[35] *Id.* at 10.

[36] FED. R. EVID. 702.

[37] *Ralston*, 275 F.3d at 970 (internal quotation marks and citation omitted).

[38] *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) (citations omitted).

whether the expert's testimony "fit[s]" the case, meaning that the proposed testimony is relevant.[39]

First, Teitelman's CV lists decades of experience in pharmacy inspections and audits,[40] and the Court finds he is qualified to testify about DEA inspection protocols and internal pharmacy compliance with DEA regulations. Although his CV reflects greater expertise in veterinary pharmacies than human ones, there is no evidence that DEA compliance differs meaningfully between human and veterinary pharmacies, and knowledge of any pharmacy's DEA compliance seems to be "within the reasonable confines" of his subject area.[41] However, whether Ridley's pharmacists properly exercised professional judgment is outside the "the reasonable confines" of his expertise. He is not a pharmacist, nor has he investigated diversions outside of internal diversion within pharmacies. Any testimony must be limited to Teitelman's areas of expertise.

Second, the relevance, or "fit," of Teitelman's testimony is unclear: Teitelman's declaration states that the prescribing doctor, the clinic, and the forger all contributed to Defendant's mistake, that the DEA failed to investigate other pharmacies or other lines of inquiry, and that this context is important for understanding the investigation as a whole. However, Defendant missed its opportunity to shift blame for any wrongdoing to other bad actors,[42] so this testimony is likely not relevant to the case's ultimate outcome. Without further context, issues about the evidence presented in his testimony should be resolved in a motion in

---

[39] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (citing *Daubert*, 509 U.S. at 591).

[40] Docket No. 96-2.

[41] *Ralston*, 275 F.3d at 970 (internal quotation marks and citation omitted).

[42] *See* Order Affirming in Part and Denying in Part Plaintiff's Motion for Summary Judgment (ruling that comparative fault is not an applicable affirmative defense as a matter of law).

limine or in objection at trial. Thus, the Court will withhold judgment on an evidentiary ruling about the content of Teitelman's testimony at this point.

The Court finds Teitelman qualified to opine about DEA inspections and investigations in general but does not find him qualified to testify about a pharmacist's professional judgment. The Court also concludes that the relevance of Teitelman's testimony is dubious but cannot be decided at this stage. Thus, the Court will deny the motion as to Teitelman.

### C. RIDLEY'S MOTION TO EXCLUDE NONRETAINED EXPERTS

Defendant also objects to Plaintiff's non-retained witnesses, Austin Grover, George Taylor, and Peter Clemons, based on insufficient Rule 26 disclosures. Defendant argues the failure to disclose was not substantially justified or harmless under Rule 37 of the Federal Rules of Civil Procedure.

Non-retained experts are witnesses who may offer expert opinion testimony if the party proponent discloses both "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."[43] "Courts have found the requirements to be relatively minimal"[44] and will admit testimony of unretained witnesses as long as specific facts and opinions are listed, no matter how "perfunctorily" disclosed.[45] The purpose of these disclosures is to "obviate the danger of unfair surprise."[46] "Generally, if the party provides a brief account that states the main points and

---

[43] FED. R. CIV. P. 26(a)(2)(C).

[44] *Marland v. Asplundh Tree Expert Co.*, 1:14-CV-40 TS, 2017 WL 477726, at *1 (D. Utah Feb. 3, 2017) (citation omitted).

[45] *Thompson v. Gammon*, No. 12-CV-0276 MCA/SMV, 2015 WL 11117310, at *3 (D.N.M. Feb. 25, 2015).

[46] *Firzlaff v. Wm. H. Reilly & Co.*, 2:18-cv-00915-DBB-DAO, 2021 WL 698162, at *4 (D. Utah Feb. 23, 2021) (citation omitted).

effectively obviates the danger of unfair surprise, the disclosures will meet the [Rule] 26(a)(2)(C) requirements."[47]

In *Thompson v. Gammon*, the District of New Mexico upheld a minimally detailed disclosure when it contained background facts supporting the witness's knowledge and a specific opinion: "'He is expected to testify that the dirt track is sketchy and never used as a road, and building it into a useable road . . . would be almost impossible.'"[48] Despite a lack of detail, the court found this specific opinion satisfied Rule 26.

The three non-retained witnesses that Defendant moved to exclude are Austin Grover, a DEA agent who investigated Defendant's alleged CSA violation; George Taylor, an "expert in DEA policies, procedures, and guidance;" and Dr. Peter Clemons, the physician whose signature was forged.[49] In their entirety, the three disclosures read:

> Austin Grover, an employee of the Drug Enforcement Administration ("DEA"). Mr. Grover is a diversion investigator and investigated Ridley's dispensing of controlled substances. He may provide expert testimony related to any aspect of his investigation of Ridley's pharmacy in Morgan, Utah.
>
> George Taylor, an employee of the DEA. Mr. Taylor is the diversion program manager of the Denver Region of the DEA and is an expert in DEA policies, procedures, and guidance. Mr. Taylor may provide expert testimony on any aspect of the Controlled Substances Act ("CSA") and its regulations, DEA guidance and policies related to the dispensing of controlled substances, the investigation of controlled substance diversion, the opioid epidemic both nationally and in Utah, and penalties under the CSA including the street value of diverted controlled substances.
>
> Dr. Peter Clemons, a family practice physician in Oregon, formerly in Ogden, Utah. Dr. Clemons and practitioners working in his medical office provided care to the two individuals who filled the prescriptions at issue in this case. Dr. Clemons may offer expert testimony on the prescribing of controlled substances and any aspect of medical treatment and care associated with, related to, or using

---

[47] *Marland*, 2017 WL 477726, at *1 (internal quotation marks and citations omitted).

[48] *Thompson*, 2015 WL 11117310, at *2.

[49] Docket No. 94, at 3–4.

controlled substances.[50]

All three disclosures, although containing sufficient information on the subject matter and facts of each witness's testimony, are missing each witness's anticipated specific opinions. Unlike in *Thompson*, where the specific opinion, however limited, was upheld, Plaintiff has offered only generalities: "any aspect" of each witness's respective expertise.[51] The disclosures' lack of specific summary opinions does not comply with Rule 26, though they would not prevent these witnesses from providing factual testimony.

But even if the disclosures do not conform to Rule 26, the witnesses may still be admissible as unretained experts as long as the omission was substantially justified or harmless.[52] Courts have broad discretion in determining whether a deficient disclosure is harmless.[53] Non-exclusive factors for determining harmlessness include "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[54]

Plaintiff does not offer any substantial justification for the lack of specific opinions, so the only remaining question is whether the deficient disclosures were harmless to Defendant.

First, there would be little prejudice or surprise to Defendant if Plaintiff's witnesses testified as experts. No trial date has been set, so an extension for further discovery would not prejudice Defendant. However, the Court finds that an extension is unnecessary. Defendant has

---

[50] *Id.*

[51] *Id.*

[52] Fed. R. Civ. P. 37(c).

[53] *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[54] *Id.* at 993 (citations omitted).

known about these witnesses and the contents of their testimony for years, and it has also had its own opportunities to depose and question them. Designating these witnesses as non-retained experts would cause little prejudice to Defendant. And based on the thorough discovery that has already taken place, the experts' opinions would not be surprising.

Defendant mentions that the DEA has brought an administrative proceeding to revoke its pharmacy license, and that this parallel proceeding is prejudicial and reeks of bad faith. Further, Defendant argues that the prejudice and delay caused by the unretained experts' testimony would lengthen both this suit and the administrative proceeding. But Defendant has brought a suit against the DEA seeking a declaratory judgment and injunction against the DEA. Because of this suit and according to the pleadings in that case, the administrative proceeding has been stayed.[55] Because the stay is in place, there is little chance that an extension here would cause prejudice to either proceeding.

Second, Plaintiff could certainly cure the designation by providing a summary of the specific expert opinions each witness would potentially testify about. The United States could summarize each witness's testimonies about red flags and whether they were present, DEA investigation practice standards, and other relevant issues relating to this case. However, additional briefing is unnecessary because the content of each witness's testimony is already apparent based on each witness's detailed depositions.

Third, the testimony would have minimal risk of disrupting the trial. These individuals may already be called as fact witnesses, and any additional questions about their professional opinions would not be disruptive.

---

[55] *Ridley's Family Markets v. Garland et al.*, 1:24-cv-00050-AMA-DAO, Docket No. 8.

Fourth, Plaintiff has not acted in bad faith. All three witnesses have already been deposed, and the Motion to admit them as non-retained witnesses stems from questions Defendant's counsel asked at their depositions. Defendant knows the witnesses and knows what types of opinions they will offer. There is no indication that Plaintiff acted in bad faith.

Plaintiff could certainly have clarified each witness's opinion in its disclosure, but for the purpose of Rule 26 and Rule 37, the deficient disclosures are harmless and "obviate the danger of unfair surprise."[56] Accordingly, the Motion to Exclude the Government's Nonretained Witnesses is denied.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff the United States' Motion to Exclude (Docket No. 96) is DENIED; It is further

ORDERED that Defendant Ridley's Family Markets' Motion to Exclude Expert Gina Moore (Docket No. 95) is GRANTED IN PART and DENIED IN PART; It is further

ORDERED that Defendant's Motion to Exclude the Government's Nonretained witnesses (Docket No. 94) is DENIED.

DATED January 21st, 2025.

BY THE COURT:

TED STEWART
United States District Judge

---

[56] *Firzlaff*, 2021 WL 698162 at *4.